Craig B. Friedberg, Esq.
LAW OFFICES OF CRAIG B. FRIEDBERG, ESQ.
Nevada Bar No. 004606
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
(702) 435-7968 – telephone
attcbf@cox.net

Evan S. Rothfarb
Daniel A. Schlanger
SCHLANGER LAW GROUP, LLP[1]
80 Broad Street, Suite 3103
New York, NY 10004
T. (212) 500-6114
F. (646) 612-7996
E. erothfarb@consumerprotection.net
dschlanger@consumerprotection.net

*Counsel for Plaintiff David J. Moscato and the Putative Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAVID J. MOSCATO, *on behalf of himself and all others similarly situated,*<br><br>        *Plaintiff,*<br><br>    v.<br><br>COMERICA BANK, CONDUENT STATE & LOCAL SOLUTIONS, INC., and CONDUENT BUSINESS SERVICES, LLC,<br><br>        *Defendants.* | Case No.  2:23-cv-00993<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiff David J. Moscato, by his attorneys, brings the following Class Action Complaint

on behalf of himself and all others similarly situated and alleges and complains of Defendants

---

[1] New York counsel will comply with LR IA 11-2 and move for pro hac vice admission within 14 days.

CLASS ACTION COMPLAINT - 1

Comerica Bank, Conduent State & Local Solutions, Inc. and Conduent Business Services, LLC as follows:

## PRELIMINARY STATEMENT

1.     David J. Moscato ("Plaintiff") is a victim of fraud.

2.     Defendants Comerica Bank, Conduent State & Local Solutions, Inc., and Conduent Business Services, LLC (collectively, "Defendants") issued a Way2Go Unemployment Benefit Card to Plaintiff.

3.     The Way2Go program is a prepaid debit MasterCard for receiving unemployment insurance payments that allows individuals to access their benefit funds.

4.     The account associated with Plaintiff's Way2Go Card ("Account") contained unemployment insurance payments from the State of Nevada.

5.     Plaintiff's Account contained thousands of dollars on deposit.

6.     By unknown means, perpetrators gained access to the account and commenced an unauthorized transaction, draining nearly all funds from the Accounts without the consent, knowledge, or authorization of Plaintiff.

7.     Following discovery of the unauthorized transaction, Plaintiff disputed the fraudulent charges with Defendants.

8.     Despite their obligation under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq., to promptly credit the Accounts, Defendants refused to credit the amounts of the stolen funds and associated fees for the transactions charged to the Account by the Defendants.

9.     Plaintiff brings claims against Defendants for violations of the EFTA, which protects consumers from liability for such unauthorized transfers.

10.     Financial institutions are barred under the EFTA from holding a consumer and accountholder liable for unauthorized use for any reason that is not specifically set forth in the statute.

CLASS ACTION COMPLAINT - 2

11.     As set forth herein, Defendants' error resolution process and form correspondence violate the EFTA:  Defendants have an overt policy of denying claims where they, the financial institutions, cannot confirm that a fraud occurred.

12.     Defendants' error resolution process violates the EFTA by explicitly placing the burden of proving the unauthorized transfer on the consumer and denying disputes on grounds that the consumer has not met his or her burden of proving that the transaction was unauthorized.

13.     The EFTA requires the opposite, providing that Defendants are liable for disputed transactions where the Defendants cannot show that the transactions were in fact authorized.

14.     Plaintiff also brings claims under the Nevada Deceptive Trade Practices Act, NRS § 598.0903, et seq.

15.     Plaintiff seeks to represent a class to remedy the harm caused by Defendants' illegal behavior and to ensure that these practices cannot continue going forward.

## **PARTIES**

16.     Plaintiff David J. Moscato is a natural person residing in Sycamore, Ohio.

17.     Plaintiff formerly resided in Las Vegas, Nevada and was a citizen of Nevada.

18.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1693a(6), and the accounts at issue were used for personal, family or household purposes.

19.     Defendant Comerica Bank ("Comerica") is a federally chartered bank.

20.     Comerica Bank is the issuer of the Way2Go Card to Plaintiff in this action.

21.     Defendant Conduent State & Local Solutions, Inc. ("Conduent Inc.") is a New York corporation.

22.     Defendant Conduent Business Services, LLC ("Conduent LLC") is a Delaware limited liability company.

23.     Upon information and belief, Conduent Inc. and Conduent LLC together ("Conduent") acted as the administrator or program manager with respect to the Way2Go Cards and associated accounts at issue in this action.

24.     Conduent provides business process services, including digital payments, claims processing, benefit administration, and regulatory compliance.

25.     Upon information and belief, Conduent administered the Plaintiff's Accounts in this action.

26.     At all relevant times, all Defendants were "financial institutions" as that term is defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

27.     Defendants agreed to provide Plaintiffs with "electronic fund transfer services" as defined by 15 U.S.C. § 1693(a)(6).

## JURISDICTION AND VENUE

28.     The Court has jurisdiction under the EFTA, 15 U.S.C. § 1693m, and under 28 U.S.C. §§ 1331.

29.     This Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this case is a class action, the classes have more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of a different state than Defendants.

30.     The Court has jurisdiction over Plaintiff's claims for declaratory relief under 28 U.S.C. § 2201.

31.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

32.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this Complaint occurred within the district, and Defendants regularly conduct business here.

## FACTS

### Defendants Provide Way2Go Cards to
### Nevada Unemployment Insurance Recipients

33.     The Nevada Department of Employment, Training and Rehabilitation (DETR) provides temporary financial assistance to workers unemployed through no fault of their own that meet Nevada's eligibility requirements.

34.    DETR began using the Way2Go Cards on July 1, 2021, as a method for distributing unemployment benefits to eligible recipients.[2]

35.    For many recipients, unemployment insurance funds from DETR are distributed by deposit into Way2Go Card Accounts, and the Way2Go Cards can be used at merchants and banks like any other MasterCard card.

36.    The Way2Go Card is a prepaid MasterCard debit card linked to a subaccount held by Defendants.

37.    The Way2Go Card itself is an "access device" as defined by 12 C.F.R. § 1005.12(c).

38.    The Way2Go Card Accounts (i.e., subaccounts) are "accounts" as that term is defined by 15 U.S.C. § 1693a(2).

39.    Conduent is directly responsible for the creation of the Way2Go Accounts and the issuance of the Way2Go Cards.

40.    Following a determination of eligibility, the State of Nevada provides Conduent with the names and contact information of recipients of unemployment insurance.

41.    Upon receipt of this information, Conduent opens Way2Go Card Accounts in conjunction with Comerica Bank.

42.    Conduent directly or indirectly holds the Way2Go Card Accounts.

43.    The Way2Go Card Accounts are only accessible via use of the Way2Go Cards.

44.    As the administrator and program manager, Conduent provides electronic fund transfer services to Way2Go Card recipients.

45.    Conduent controls central and basic aspects of the Way2Go Card Program, including all consumer-facing functions.

46.    Conduent sends the Way2Go Card to the consumer when the Way2Go Card Account is created.

_____

[2] https://detr.nv.gov/page/Unemployment_Debit_Card

CLASS ACTION COMPLAINT - 5

47.     Conduent handles all customer service issues relating to Way2Go Card.

48.     For example, when a consumer alleges that an unauthorized electronic fund transfer has occurred, Conduent handles the dispute process.

49.     Comerica Bank refers any such complaints – along with all other customer services issues with Way2Go Cards – to Conduent.

50.     All customer notices, disputes and complaints concerning fraud or unauthorized use are sent or otherwise directed to Conduent and, to extent a response is issued or an action taken, Conduent is responsible for the response.

51.     Comerica Bank has no process for resolving disputes relating to unauthorized electronic fund transfers on Way2Go Cards.

### Thousands of Dollars Are Stolen from
### David Moscato's Way2Go Card Account

52.     After a wait of nearly 20 months, DETR determined that Plaintiff David Moscato was eligible to receive Nevada unemployment insurance benefits.

53.     On June 21, 2022, DETR paid the benefits owed to Mr. Moscato via his Way2Go Card Account in deposits equal to $10,457.00 in the form of two deposits equal to $5,657.00 and $4,800.00, respectively.

54.     Shortly thereafter, on June 28, 2022, an unauthorized transfer identified as a "purchase" in the amount of $9,000 appeared on the Account.

55.     The unauthorized transfer of funds from Mr. Moscato's Account constituted an "electronic fund transfer" as that term is defined by 15 U.S.C. § 1693a(7).

56.     The $9,000.00 unauthorized transfer of funds from the Account was attributed to a merchant known as Rural King located in Tiffin, Ohio by the Way2Go Card.

57.     A subsequent police investigation, which included a review of security footage and sales transaction history, reflected that no such transaction ever took place at Rural King, however.

58.    Mr. Moscato had no knowledge of and did not consent to the unauthorized transfer.

59.    On or about August 26, 2022, Mr. Moscato first learned that the unauthorized transfer of funds had taken place and was shocked and upset to learn that the vast majority of his unemployment funds had disappeared.

60.    Mr. Moscato promptly reported the unauthorized transfer to Defendants and initiated a dispute regarding the unauthorized charge.

61.    By two letters dated August 26, 2022, Defendants acknowledged receipt of Mr. Moscato's dispute and requested that he provide additional information.

62.    Mr. Moscato cooperated with any requests by Defendants and promptly responded to Defendants' requests for additional information.

63.    On September 6, 2022, Defendants informed Mr. Moscato that his dispute was denied.

64.    Following the submission of Mr. Moscato's dispute concerning the fraud, on September 14, 2022, the Tiffin Police Department issued a report which noted an investigation had been performed and stated, "there is evidence that no one ever came to the Tiffin Rural King and made a $9000.00 purchase."

65.    On September 16, 2022, Mr. Moscato appealed the denial of his dispute of the fraudulent transfer with Defendants.

66.    On September 20, 2022, Defendants again denied Mr. Moscato's dispute.

67.    On September 29, 2022, Mr. Moscato again appealed the denial of his dispute and requested reimbursement of the stolen funds.

68.    On September 30, 2022, Defendants denied the dispute and provided written correspondence, stating: "During our investigation we found a conflict in the information provided by you and the information resulting from our research.  Based on this information, we cannot confirm that fraud occurred."

69.     Defendants failed to identify what information presented a "conflict" or that they had any basis to conclude that the purchase had been authorized by Mr. Moscato in any way.

70.     Defendants did not make a good-faith investigation into Mr. Moscato's dispute.

71.     Defendants did not have a reasonable basis for believing that the transfer of funds from Mr. Moscato's Way2Go Account was not in error.

72.     Defendants never refunded or issued a credit for any of the money stolen from Mr. Moscato's Account.

73.     Mr. Moscato was damaged by Defendants' misconduct, including the loss of $9,000.00 of his funds.

**Defendants Know That Many Way2Go Card
Accounts Were Compromised**

74.     Mr. Moscato was far from the only consumer affected by unauthorized transactions from Way2Go Card accounts containing government benefits.

75.     During the same time period, money was stolen from numerous Way2Go Card accounts due to Defendants' failures to adequately safeguard the funds.

76.     Defendants were aware of the unauthorized transactions, both through consumer complaints and through their own internal controls.

77.     Yet Defendants continued to hold consumers liable for unauthorized transactions in flagrant disregard of federal law.

78.     The EFTA was enacted to protect "individual consumer rights" affected by transactions.  15 U.S.C. § 1693.

79.     One of the EFTA's fundamental protections is the provision stating, absent an enumerated exception: "a consumer incurs no liability from an unauthorized electronic fund transfer."  15 U.S.C. § 1693g(e).

80.     Defendants egregiously failed in these and other obligations under EFTA.

81.    Under federal law, Defendants were obligated to refund all of the money taken from Mr. Moscato and the many other vulnerable Nevadans who lost crucial benefits due to Defendants' failure to secure the Way2Go Card accounts.

**Class Allegations**

82.    Plaintiff brings this claim on behalf of himself, and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23.

83.    Plaintiff seeks to represent an EFTA Class and a Nevada Deceptive Trade Practices Act Class (collectively, "the Classes").

84.    The EFTA Class is defined as follows:

    a.    all persons in the United States who currently have or previously had a Nevada Way2Go Card MasterCard Prepaid Card account; and

    b.    notified Defendants they disputed one or more charges on their account; and

    c.    within one year of the commencement of this action, were sent or received a response from Defendants that denied the dispute; and:

    d.    whose dispute was denied, in sum or substance, based on the stated grounds that Defendants could not confirm or determine that the disputed transaction(s) were fraudulent or otherwise unauthorized.

85.    The Nevada Deceptive Trade Practices Act Class is defined as follows:

    a.    all persons in the United States who currently have or previously had a Nevada Way2Go Card MasterCard Prepaid Card account; and

    b.    notified Defendants they disputed one or more charges on their account; and

    c.    within four years of the commencement of this action, were sent or received a response from Defendants that denied the dispute; and:

    d.    whose dispute was denied, in sum or substance, based on the stated grounds that Defendants could not confirm or determine that the disputed transaction(s) were fraudulent or otherwise unauthorized.

86.     Excluded from the Classes are anyone employed by counsel for Plaintiff in this action and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

87.     As set forth above, there are thousands of people who received unemployment insurance benefits from Nevada through the Way2Go Card program.

88.     As set forth above, when responding to these disputes Defendants issued form communications that Plaintiff alleges violate the law.

89.     These standardized communications reflect generalized policies and procedures that Plaintiff alleges violate the law.

90.     Thus, there are undoubtedly many thousands of customers that have already been victims of Defendants' unlawful communications, policies and practices.

91.     Further, there are millions of consumers that will be subject to these unlawful communications, policies and practices in the future.

92.     As such, the Classes are sufficiently numerous that joinder of all members is impracticable.

93.     Although the exact number of members of the Classes and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendants' records.

*Existence and Predominance of Common Questions*

94.     Common questions of law and fact exist as to Plaintiff and all members of the Classes and predominate over questions affecting only individual members of the Classes.

95.     These common questions include:

    a.     Whether Defendants have a standardized practice of denying disputed transactions by consumers unless the consumer establishes the transactions were not authorized.

///

///

CLASS ACTION COMPLAINT - 10

b. Whether Defendants' denial of disputes on the stated grounds that they could not confirm or determine that the disputed transaction(s) were fraudulent or otherwise unauthorized is unlawful under the EFTA and/or Nevada law.

c. Whether Defendants' denial of disputes with an explanation that it could not confirm fraud occurred is an unlawful and deceptive trade practice under Nevada law.

*Typicality*

96.    Plaintiff has claims that are typical of the claims of the Classes because each Plaintiff is a member of each of the Classes and was subject to the same unlawful conduct as the other members of the Classes.

97.    Thus, Plaintiff's claims—based on the same facts and legal theories as the claims of all other members of the Classes—are typical of the claims of the Classes.

*Adequacy*

98.    Plaintiff will fairly and adequately represent the interests of the members of the Classes.

99.    Plaintiff's interests do not conflict with the interests of the members of the Classes he seeks to represent.

100.    Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters.

101.    There is no reason why Plaintiff and his counsel will not vigorously pursue this matter.

*Superiority*

102.    A class action is superior to other available means for the fair and efficient adjudication of the claims at issue.

103.    The damages suffered by each individual member of the Classes may be limited.

104.    Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

105.    Further, it would be virtually impossible for each individual member of the Classes to redress the wrongs done to them.

106.    Even if the members of the Classes themselves could afford such individual litigation, the court system could not.

107.    Individualized litigation presents a potential for inconsistent or contradictory judgments.

108.    Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

109.    By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

110.    In the alternative, the Classes may be certified because:

a.  the prosecution of separate actions by the individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendants;

b.  the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

///

///

CLASS ACTION COMPLAINT - 12

## FIRST CLAIM FOR RELIEF
### (Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*)

111.    Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

112.    The EFTA places sharp limitations on consumer liability for unauthorized transactions.  *See* 15 U.S.C. § 1693g ("Consumer liability"); 12 C.F.R. § 1005.6 ("Liability of consumer for unauthorized transfers").

113.    Moreover, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

114.    Specifically, pursuant to Section 1693g(b), it is Defendants' burden to prove that the disputed transfer was authorized:

> (b)  BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) were in fact made in accordance with such section.

115.    However, Defendants are explicit in the reversal of that burden, regularly denying claims on grounds that they "cannot confirm that fraud occurred."

116.    Defendants acts and omissions set forth above constitute violations of the EFTA.

117.    As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff are entitled to an award of statutory and actual damages as well as attorney's fees and costs.

118.    Defendants' imposition of the burden of proof on the consumer contrary to statute constitutes a violation of 1693f(e), entitling Plaintiff (and each member of the class) to treble damages.

## SECOND CLAIM FOR RELIEF
### (Nevada Deceptive Trade Practices Act, NRS § 598 *et seq.*)

119.    Plaintiff realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

120.    Defendants violated numerous provisions of the Nevada Deceptive Trade Practices Act.

121.    For example, the Nevada Deceptive Trade Practices Act prohibits any false representation that is knowingly made in a transaction. NRS § 598.0915(15).

122.    Defendants also violated NRS § 598.0923(1)(c) that prohibits the violation of a state or federal statute or regulation relating to the sale or lease of goods or services.

123.    Defendants' false representations concern consumer liability for unauthorized transfers and the burden imposed on consumers in disputing such transactions, which include, among other things, stating that because they "cannot confirm that fraud occurred," consumers are not entitled to be reimbursed for unauthorized transactions.

124.    As a direct and proximate result of Defendants' violations of law, Plaintiff and the members of the Classes have failed to receive reimbursements for unauthorized transactions from Defendants.

125.    Plaintiff, on behalf of himself and the members of the Classes, seek the following relief against Defendants: (a) actual damages pursuant to NRS § 41.600(3)(a); and (b) costs and attorney fees pursuant to NRS § 41.600(3)(c).

126.    Plaintiffs further seek two times the actual damages and attorney fees and costs, for those members of the Classes that are older or vulnerable under NRS § 41.1395.

**WHEREFORE**, Plaintiff seeks judgment in his favor and damages against Defendants:

A.    An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

B.    An award of actual damages, double damages, treble damages, statutory damages, punitive damages, declaratory judgment, attorney's fees and costs; and

C.    Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

RESPECTFULLY SUBMITTED and DATED this 27th day of June, 2023.

LAW OFFICES OF CRAIG B. FRIEDBERG, ESQ.

*/s/ Craig B. Friedberg*
Craig B. Friedberg, Esq.
Nevada Bar No. 004606
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
(702) 435-7968 – telephone
attcbf@cox.net
    -and-
Evan S. Rothfarb
Daniel A. Schlanger
SCHLANGER LAW GROUP, LLP
80 Broad Street, Suite 3103
New York, NY 10004
T. (212) 500-6114
F. (646) 612-7996
E. erothfarb@consumerprotection.net
dschlanger@consumerprotection.net

*Counsel for Plaintiff David J. Moscato*
*and the Putative Class*

CLASS ACTION COMPLAINT - 15